1  SEYFARTH SHAW LLP
   Timothy L. Hix (SBN 184372)
2  thix@seyfarth.com
   601 South Figueroa Street, Suite 3300
3  Los Angeles, California 90017-5793
   Telephone:  (213) 270-9600
4  Facsimile: (213) 270-9601

5  SEYFARTH SHAW LLP
   Shardé T. Skahan (SBN 286157)
6  sskahan@seyfarth.com
   Francesca L. Hunter (SBN 327571)
7  fhunter@seyfarth.com
   2029 Century Park East, Suite 3500
8  Los Angeles, California 90067-3021
   Telephone:  (310) 277-7200
9  Facsimile:   (310) 201-5219

10 Attorneys for Defendant
   QVC, INC.

11

12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16  VOYICE DONELL GEORGE GOLDSMITH, an individual, | Case No. |
| 17                Plaintiff, | (San Bernardino County Superior Court Case No. CIV SB 2319785) |
| 18      v. | |
| 19  QVC, INC., a Delaware corporation; and DOES 1 through 20, inclusive, | **DEFENDANT QVC INC.'S NOTICE OF REMOVAL (DIVERSITY JURISDICTION)** |
| 20 | |
| 21                Defendants. | Date Action Filed:  August 21, 2023 |
| 22 | Trial Date:  None. |

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL (DIVERSITY JURISDICTION)

305978426v.3

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** that pursuant to 28 U.S.C. sections 1332, 1441, and 1446, Defendant QVC, Inc. (hereinafter "QVC"), removes to this Court, the state court action described below filed in the Superior Court of the State of California, for the County of San Bernardino. This Court has original federal jurisdiction over this action based on diversity of citizenship, 28 U.S.C. section 1332(a)(1).

## **PLEADINGS, PROCESS, AND ORDERS**

1. On August 21, 2023, Voyice Donell George Goldsmith ("Plaintiff") filed a Complaint in the Superior Court of California, County of San Bernardino, entitled *Voyice Donell George Goldsmith v. QVC, Inc., a Delaware Corporation, and DOES 1 through 20, inclusive*, Case No. CIV DS 2319785 (the "Complaint"). The Complaint alleges the following causes of action: (1) Discrimination in Violation of Govt. Code § 12940 *et seq.*; (2) Retaliation in Violation of Govt. Code § 12940 *et seq.*; (3) Failure to Prevent Discrimination and Retaliation in Violation of Govt. Code. § 12940(k); (4) Failure to Provide Reasonable Accommodations in Violation of Govt. Code § 12940 *et seq.*; (5) Failure to Engage in a Good Faith Interactive Process in Violation of Govt. Code § 12940 *et seq.*; (6) Declaratory Judgment; and (7) Wrongful Termination in Violation of Public Policy.

2. On October 24, 2023, QVC's registered agent for service of process in California received, via process server, the Summons, Complaint, Certificate of Assignment, and Civil Case Cover Sheet. Declaration of Alicia Keane in Support of Defendant's Notice of Removal ("Keane Decl."), ¶ 6. True and correct copies of the Complaint, Summons, Civil Case Cover Sheet, and Certificate of Assignment are attached hereto to the Declaration of Francesca Hunter ("Hunter Decl.") as Exhibit A.

3. On November 20, 2023, QVC filed its Answer in the Superior Court of California, County of San Bernardino. A true and correct copy of the Answer is attached hereto the Hunter Decl. as Exhibit B.

4. A Trial Setting Conference is currently scheduled in Department S31 of the Superior Court of California, County of San Bernardino, on February 21, 2024 at 8:30 a.m.

5. The exhibits listed above and attached hereto constitute all prior pleadings, process, and orders filed with any court in this matter.

## TIMELINESS OF REMOVAL

6. This Notice of Removal is timely since it is filed within thirty (30) days of service of the Summons and Complaint. 28 U.S.C. § 1446(b)(1); Fed. R. Civ. P. 6(a)(1)(C) (if the last day to remove "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); *Melamed v. JPMorgan Chase Bank, N.A.*, 2015 WL 5923533, at *3 (C.D. Cal. October 8, 2015) (applying Fed. R. Civ. P. 6(a)(1)(C) to the deadline to remove). Service of the Summons and Complaint on a party outside California by first-class mail is deemed complete on the 10th day after such mailing. Cal. C. Civ. Proc. 415.40.

## DIVERSITY JURISDICTION

7. This Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to 28 U.S.C. section 1441(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

### A. Plaintiff's Citizenship

8. For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *Gonzalez v. Starwood Hotels*, 2016 WL 1611576, at *2 (C.D. Cal. April 21, 2016). A party's residence is *prima facie* evidence of their domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *see also Golub v. Wells Fargo Bank, N.A.*, 2014 WL 997336, at *1 (C.D. Cal. March 13, 2014) (plaintiff's uncontroverted claim of residence in the complaint is sufficient to establish citizenship for purposes of diversity).

9. Plaintiff has alleged that he "is and at all times relevant hereto was a resident of the County of San Bernardino, State of California." *See* Ex. A, ¶ 2.

10. Moreover, and according to Defendant's records, Plaintiff's home address while he was employed at QVC was in Upland, California. Keane Decl., ¶ 8. Therefore, Plaintiff was domiciled in California while he worked at QVC in Ontario, California.

11. As such, Defendant alleges and believes that Plaintiff is, or was at the time of the filing of this civil action, a citizen of California.

**B.  Defendant's Citizenship**

12. Defendant QVC, is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

13. Defendant QVC, is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware. Keane Decl., ¶ 9. Thus, for purposes of diversity jurisdiction, QVC is a citizen of Delaware.

14. Further, as shown below, Defendant QVC's principal place of business is, and has been at all times since this action commenced, located in the Commonwealth of Pennsylvania. Keane Decl., ¶ 10. Thus, for purposes of diversity jurisdiction, QVC is also a citizen of Pennsylvania.

15. The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high-level officers direct, control, and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

16. Under the "nerve center" test, Pennsylvania emerges as QVC's principal place of business. QVC's corporate headquarters is located in West Chester, Pennsylvania, where QVC's high-level officers direct, control, and coordinate QVC's activities. Keane Decl., ¶ 10. QVC's high-level corporate officers maintain offices in Pennsylvania, and many of QVC's corporate-level functions are performed in the Pennsylvania office. *Id.* Additionally, many of QVC's executive and administrative functions are directed from the West Chester, Pennsylvania headquarters. *Id.*

17. Therefore, for purposes of diversity of citizenship, QVC is, and has been at all times since this action commenced, a citizen of the State of Delaware and the Commonwealth of Pennsylvania. 28 U.S.C. § 1332(c)(1).

### C. Doe Defendants' Citizenship May Be Disregarded.

18. The presence of Doe Defendants in this case has no bearing on diversity of citizenship for removal. Pursuant to 28 U.S.C. section 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of removing actions based on diversity jurisdiction under 28 U.S.C. section 1332(a). *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe Defendants 1 through 20, inclusive, does not deprive this Court of jurisdiction.

### THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL MINIMUM

19. While QVC denies any liability as to Plaintiff's claims, the amount in controversy requirement for diversity jurisdiction is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1332(a)(1); s*ee Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (where a plaintiff's state court complaint does not specify a particular amount of damages, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds the requisite threshold).

/ / /

20. Further, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that a court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may set forth underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *See id.*; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

21. As the Supreme Court made clear, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). Defendants are not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)).

22. In determining whether a complaint meets the $75,000 threshold under U.S.C. section 1332(a), the Court must consider a plaintiff's alleged aggregate damages, special damages, punitive damages, and attorneys' fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees may be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account in determining amount in controversy where recoverable under state law); *Castanon*, 2016 WL 589853, at *3-4 ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages).

23. Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.

### A.   Plaintiff's Claims Likely Exceed the Amount in Controversy.

24. Plaintiff asserts seven claims – five under the Fair Employment and Housing Act ("FEHA"), one for declaratory judgment, and one for wrongful termination in violation of public policy – which stem from alleged discrimination.

25. Assuming Plaintiff were to prevail at trial, he will claim lost wages from the time of his separation of employment through the completion of trial. Plaintiff was employed by QVC as a full-time Fulfillment Center Team Member from August 11, 2020, to November 15, 2021. Keane Decl., ¶ 7. At the time of his termination, he earned $18.80 per hour and was a full-time employee. *Id*. If the trial of his claims were to occur a year after his lawsuit was filed, or on or about August 21, 2024, his alleged lost earnings would total approximately $108,288 (or $752 weekly x 144 weeks from November 15, 2021 (his last date worked) through August 21, 2024 (the projected date of the trial). Even if his lost wage claim is only calculated from the date of termination (November 15, 2021) to the date the Complaint was filed (August 21, 2023), the amount in controversy for back wages would be $69,184 ($752 weekly x 92 weeks).

26. To establish the amount in controversy, Defendants may also rely on jury verdicts involving similar facts and claims in California where the awarded damages exceed $75,000. *See Polk v. Metro. Transp. Auth.*, 2012 WL 864463 (L.A. County Sup. Ct.) (award of $250,000 to former employee where company failed to engage in interactive process); *Dickinson v. Allstate Ins. Co.*, 2011 WL 4048838 (Orange County Sup. Ct.) (award of $341,322 to employee in disability discrimination action); *Palma v. Rite Aid Corp.*, 2012 WL 3541952 (L.A. County Sup. Ct.) (award of $3,522,070 to

employee who was terminated after taking medical leaves in disability discrimination action); *Quiroz v. Ralphs Grocery Company*, 2012 WL 3745798 (L.A. County Sup. Ct.) (award of $490,356 to employee who was terminated after a second knee surgery resulting from an industrial injury in disability discrimination action); *Siglin v. Carden Whittier School, Inc.*, 2012 WL 1798892 (L.A. County Sup. Ct.) (award of $323,985 to employee who was terminated after returning from a medical leave of absence); *Betson v. Rite Aid Corp.*, 2011 WL 3606913 (L.A. County Sup. Ct.) (award of $500,000 to employee in disability action); *Vanderheiden v. City of Alameda*, 2011 WL 1562075 (Alameda County Sup. Ct.) (award of $680,182 to employee in disability discrimination action); *Li v. Wyndham Vacation Ownership, Inc.*, 2010 WL 4111579 (Contra Costa County Sup. Ct.) ($346,000 jury verdict awarded to employee who was demoted and replaced, and who ultimately resigned after going on medical leave); *Landau v. County of Riverside*, 2010 WL 1648442 (C.D. Cal.) (award of $1,033,500 to employee who brought action against employer based on disability discrimination and failure to accommodate); *Dodd v. Haight Brown & Bonesteel LLP*, 2010 WL 4845803 (L.A. County Sup. Ct.) (award of $410,520 to employee wrongfully terminated based on disability and medical condition); *Ybarra v. Dacor Holding Inc.*, 2010 WL 2404221 (L.A. County Sup. Ct.) (award of $615,236 to employee in disability discrimination and wrongful termination action); *Malone v. Potter*, 2009 WL 999514 (C.D. Cal.) (award of $300,000 to employee in disability discrimination and retaliation action); *Morales v. L.A. County Metro. Transp. Auth.*, 2008 WL 4488427 (L.A. County Sup. Ct.) (award of $2,247,137 to employee terminated due to disability); *Ismen v. Beverly Hosp.*, 2008 WL 4056258 (L.A. County Sup. Ct.) (award of $1,180,164 in disability discrimination and failure to accommodate action); *Kolas v. Alticor Inc.*, 2008 WL 6040410 (L.A. County Sup. Ct.) (award of $600,000 to employee claiming wrongful termination and disability and age discrimination); *Vaughn v. CNA Cas. of California*, 2008 WL 4056256 (C.D. Cal.) (award of $850,000 to employee in disability discrimination action); *Leuzinger v. County of Lake*, 2007 WL 3022455 (N.D. Cal.) (jury verdict awarding employee $1,679,001 in

disability discrimination and failure to accommodate action); *Orue v. Sears, Roebuck & Co.*, 2007 WL 2456108 (L.A. County Sup. Ct.) (award of $142,000 plus costs and interests to employee who brought action based on disability and age discrimination against employer who wrongfully terminated her); *Shay v. TG Constr., Inc.*, 2002 WL 31415020 (Ventura County Sup. Ct.) (award of $462,500 to employee wrongfully terminated on basis of disability). A true and correct copy of these verdict summaries are attached hereto the Hunter Decl. as Exhibit C.

### B. The Potential Emotional Distress Damages Establish the Amount In Controversy Exceeds $75,000

27. In addition, Plaintiff claims emotional distress damages including "severe and profound pain and emotional distress, anxiety, depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses for psychological counseling and treatment . . . ." *See* Ex. A, ¶ 30, Prayer for Relief ¶ 1. A review of jury verdicts in California demonstrates that emotional distress awards in discrimination and similar cases commonly exceed $75,000. *See Betson*, supra, 2011 WL 3606913 (pain and suffering award of $500,000 to employee in disability harassment action); *Vaughn, supra*, 2008 WL 4056256 (award of $300,000 in past and future non-economic loss to employee in disability discrimination action); *Ismen, supra*, 2008 WL 4056258 (jury award of $113,000 for emotional distress due in a disability discrimination and failure to accommodate action); *Christle v. City of Los Angeles*, 2007 WL 4624405 (L.A. County Sup. Ct.) (award of $804,760 in non-economic damages in retaliation case); *Shay, supra*, 2002 WL 1918045 (jury award of $125,000 in non-economic damages to employee wrongfully terminated on basis of disability); *Mnaskanian v. 21st Century Ins. Co.*, 2006 WL 2044625 (L.A. County Sup. Ct.) (jury award of $300,000 in non-economic damages for employee denied reinstatement despite request for reasonable accommodation for disability); *Miller v. Lockheed Martin*, 2005 WL 4126684 (Los Angeles County Sup. Ct.) (jury award of $300,000 in non-economic damages for employee terminated after requesting accommodation for disability); *Cal. Dep't of Fair Employment and Hous. v.*

*County of Riverside*, 2003 WL 24304125 (Riverside County Sup. Ct.) (jury awarded $300,000 for emotional distress damages in an alleged failure to accommodate and disability discrimination case). A true and correct copy of these verdict summaries is attached hereto the Hunter Decl. as Exhibit D.

### C.   Potential Attorneys' Fees Establish the Amount In Controversy Exceeds $75,000.

28.   Plaintiff also alleges that he is entitled to attorneys' fees. *See* Ex. A; Prayer for Relief ¶ 5. Attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal based on diversity jurisdiction. *See Galt*, 142 F.3d at 1156.

29.   Here, Plaintiff, if successful, would be entitled to an award of attorneys' fees that itself "more likely than not" would exceed $75,000. Verdicts show that attorneys' fees in employment discrimination cases typically exceed $75,000. *See Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of $159,762.50 in alleged discrimination case); *McMillian v. City of Los Angeles*, 2005 WL 3729094 (Los Angeles County Sup. Ct.) ($504,926 in attorneys' fees awarded in discrimination case); *Denenberg v. California Dep't of Trans.*, No. GIC836582, 2007 WL 2827715 (San Diego County Sup. Ct. Sept. 16, 2006) (attorney's fees award of $490,000 in case alleging discrimination, harassment, and retaliation); *Jaffe v. UHS-Corona Inc.*, No. RIC-543130, 2013 WL 8509821 (Riverside County Sup. Ct. May 7, 2013) ($160,000 in attorneys' fees awarded in a wrongful termination and wage and hour action); *Lieberman vs. WellPoint Inc.*, No. 56200900348433, 2011 WL 10725941 (Ventura County Sup. Ct. July 6, 2011) (attorneys' fees of $207,775 awarded in an action involving discrimination, wrongful termination and breach of contract); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorney's fees award of $490,000 for claims including discrimination); *Wooley v. Jack in the Box Restaurant*, 2002 WL 31118460 (C.D. Cal.) ($160,293 in attorneys' fees

/ / /

awarded in discrimination case). A true and correct copy of these verdict summaries is attached hereto the Hunter Decl. as Exhibit E.

### D. Potential Punitive Damages Establish the Amount In Controversy Exceeds $75,000.

30. Plaintiff also claims he is entitled to punitive damages. *See* Ex. A, ¶¶ 33, 44, 56, 78, 96, and Prayer for Relief, at ¶ 4.

31. A request for punitive damages must be taken into account for purposes of determining the amount in controversy where such damages are recoverable under state law. *See Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (stating that punitive damages must be taken into account where recoverable under state law). A court may consider the aggregate value of claims for compensatory and punitive damages. *See Bell v. Preferred Life Ass'n Soc'y of Montgomery, ALA et al.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint, each must be considered to the extent claimed in determining jurisdictional amount") (footnote omitted).

32. Here, an award of punitive damages would by itself more likely than not exceed $75,000. The wealth of the defendant and the amount of compensatory damages are two of the three factors courts consider in arriving at punitive damage awards. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427–28 (2003). Given QVC's net worth, it is more likely than not that if Plaintiff recovers punitive damages, that award would exceed the back pay he is seeking (though QVC reserves the right to contest punitive damages or the amount thereof).

33. Furthermore, courts have affirmed jury verdicts exceeding the jurisdictional threshold in punitive damages in alleged discrimination cases. *See, e.g., Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) (holding that punitive damage award of $1.9 million equal to the compensatory damage award was appropriate in a discrimination case). Therefore, the request for punitive damages weighs in favor of establishing the

///

amount in controversy required for removal. A true and correct copy of this decision is attached hereto the Hunter Decl. as Exhibit F.

34. Based upon the allegations contained in Plaintiff's Complaint, Plaintiff seeks damages within the jurisdictional authority of this Court. Since diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy between the parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1). This action therefore is properly removed to this Court.

## REMOVAL TO THIS DISTRICT COURT IS PROPER

35. This action is properly removed to this District Court and division pursuant to 28 U.S.C. section 1441(a), since the action originally was brought in the Superior Court of the State of California, for the County of San Bernardino. *See* Ex. A.

## SERVICE OF NOTICE OF REMOVAL ON STATE COURT

36. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, for the County of San Bernardino, as required under 28 U.S.C. section 1446(d).

37. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Defendant and filed in this action are attached hereto the Hunter Decl. as Exhibit A.

## PRAYER FOR REMOVAL

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, for the County of San Bernardino, to the United States District Court for the Central District of California.

DATED: November 21, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: _____
Timothy L. Hix
Shardé T. Skahan
Francesca L. Hunter
Attorneys for Defendant QVC, INC.